SUPERIOR COURT
OF THE
STATE OF DELAWARE

RICHARD R. COOCH
RESIDENT JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 North King Street, Suite 10400
Wilmington, Delaware 19801-3733
(302) 255-0664

Michael I. Silverman, Esquire
Silverman, McDonald & Friedman
1010 North Bancroft Parkway, Suite 22
Wilmington, Delaware 19805
Attorney for Plaintiffs Kelly Tracey and Janet Blankenship

Colin M. Shalk, Esquire
Casarino Christman Shalk Ransom & Doss
405 North King Street, Suite 300
P.O. Box 1276
Wilmington, Delaware 19899
Attorney for Defendant State Farm Mutual
Automobile Insurance Company

**Re: Kelly Tracey and Janet Blankenship v. State Farm Mutual
Automobile Insurance Company
C.A. No. N13C-05-273 RRC**

Submitted: April 1, 2015
Decided: June 23, 2015

On Plaintiffs Kelly Tracey's and Janet Blankenship's
Cross-Motion for Summary Judgment.
**DENIED.**

On Defendant State Farm Mutual Automobile Insurance Company's
Amended Cross-Motion for Summary Judgment.
**GRANTED.**

Dear Counsel:

## I.    INTRODUCTION

Plaintiffs Kelly Tracey and Janet Blankenship and Defendant State Farm
Mutual Automobile Insurance Company have cross-moved for summary

1

judgment.[1]  The Court must determine whether State Farm violated 18 *Del C.* § 3902(b) by failing to offer certain coverage when Plaintiff Blankenship changed her automobile insurance policy in 2007 such that reformation of Plaintiff Blankenship's policy is now warranted.  The Court must also determine whether any of Plaintiff Tracey's PIP bills are payable by Defendant pursuant to statute.

The Court concludes that State Farm did not breach any statutory duty to offer uninsured/underinsured ("UM/UIM") coverage to Plaintiff Blankenship and as a result, reformation of Plaintiff Blankenship's policy is not warranted.  Further, the Court finds that no PIP bills are eligible for payment under the particular facts of this case.  Plaintiffs' Motion for Summary Judgment is therefore **DENIED.** Defendant's Motion for Summary Judgment is therefore **GRANTED.**

## II.   FACTUAL AND PROCEDURAL HISTORY

The parties in this case agreed to a stipulation of the factual and procedural history that was submitted to the Court in two parts.  The parties agree that these are the complete operative facts upon which to decide the motions.  The two stipulations appear *in toto* below:

### A. Joint Stipulation of Facts Related to Underinsured Motorist Claims:

1. On May 25, 2011 Kelly Tracey was a pedestrian who was struck by a vehicle driven by Deborah Fitzgerald.
2. Ms. Tracey suffered from multiple injuries and was hospitalized from May 26, 2011 through July 25, 2011.
3. On the above referenced date, Kelly Tracey had a policy of insurance with State Farm Mutual Automobile Insurance Company.  Plaintiff is not pursuing reformation of the UIM limits on that policy.
4. Given the applicable coverage available through the striking vehicle, Plaintiff Tracey is not eligible for UIM benefits under the Tracey Policy.
5. On May 25, 2011 Kelly Tracey was a resident relative of Janet Blankenship, and thus an insured pursuant to the Blankenship Policy.
6. On May 25, 2011 Janet Blankenship had a policy of insurance with State Farm Mutual Automobile Insurance Company.  On that date, Ms. Blankenship's policy (hereinafter "the Blankenship Policy") had split liability

---

[1] Janet Blankenship was not added as a party until after briefing on these motions had concluded.  The ruling on these Motions applies to both Plaintiffs.  Moreover, any reference to "Plaintiffs" is to both Plaintiff Tracey and Plaintiff Blankenship, unless stated otherwise.

limits of $300,000 bodily injury per person, $300,000 bodily injury per occurrence and $100,000 property damage. This is commonly known as 300/300/100. The Blankenship Policy also had split UM/UIM limits of $100,000 bodily injury per person, $300,000 bodily injury per occurrence and $10,000 property damage. This is commonly known as 100/300/10.

7. The Blankenship Policy was original purchased on January 2, 1990.

8. The last policy change to occur on the Blankenship Policy occurred in 2007, when Ms. Blankenship added a 2006 Chrysler Sebring to the insurance policy. No additional offers of UM or UIM coverages were made at that time.

9. At the time of the 2007 change, the Blankenship Policy carried UIM benefits in the same amount as it did on May 25, 2011.

10. In 2007, and after, State Farm did not offer single limit $300,000 Uninsured/Underinsured ("UM/UIM") motorist coverage. State Farm offered split limit coverages for UM/UIM. The amount of property damage for UM/UIM is predefined as $10,000 for property damage losses.

11. In 2007 State Farm did have an available option for purchase of $300,000 per person and $300,000 per occurrence. The amount of property damage for UM/UIM was predefined as $10,000 for property damage losses.[2]

## B. Joint Stipulation of Facts Related to PIP Claims:

1. On May 25, 2011 Kelly Tracey was a pedestrian who was struck by a vehicle driven by Deborah Fitzgerald.

2. Ms. Tracey suffered from multiple injuries and was hospitalized from May 26, 2011 through July 25, 2011.

3. On the above referenced date, Kelly Tracey had [a] policy of insurance with State Farm Mutual Automobile Insurance Company. On that date, Ms. Tracey's policy (hereinafter "the Tracey Policy") had PIP benefits of $15,000 per person and $30,000 per occurrence, commonly known as $15,000/$30,000.

4. On the above referenced date, Janet Blankenship had [a] policy of insurance with State Farm Mutual Automobile Insurance Company. On that date, Ms. Blankenship's policy (hereinafter "the Blankenship Policy") had PIP benefits of $100,00 per person and $300,000 per occurrence, commonly known as $100,000/$300,000.

---

[2] Pltf and Def.'s Joint Stip. of Facts Related to the Underinsured Motorist Claims, D.I. 76 (Feb. 16, 2015).

5. On January 9, 2013 State Farm opened up a PIP claim for Ms. Tracey. State Farm assigned a PIP adjuster and claim number.

6. State Farm investigated whether there was PIP coverage [] available for Kelly Tracey under the Tracey Policy and the Blankenship Policy.

7. On May 22, 2013 State Farm denied PIP coverage from the Tracey Policy and advised Plaintiff's counsel that coverage was being investigated under the Blankenship Policy. State Farm did not communicate a determination that there was PIP coverage under the Blankenship Policy, or that coverage under that policy was denied.

8. As the accident occurred on May 25, 2011, the cut-off date for submission of PIP bills was August 25, 2013.

9. On May 25, 2011 Kelly Tracey was a resident relative of Janet Blankenship, and thus an insured pursuant to the Blankenship Policy.

10. There was no completed PIP application returned to State Farm prior to August 25, 2013.

11. On August 19, 2013, State Farm had what is attached as Exhibit "A" in their possession.

12. A PIP application was sent to Plaintiff's counsel on August 27, 2013 via fax.

13. State Farm sent a subsequent fax later that day which stated the application had been sent in error.

14. On October 15, 2013, Plaintiff sent a letter to State Farm, enclosing an application for PIP benefits that had been completed on October 10, 2013.[3]

## III.  THE PARTIES' CONTENTIONS

### A. Plaintiffs' Contentions[4]

Plaintiffs contend that Defendant State Farm breached its statutory duty under 18 *Del. C*. § 3902(b) when it did not offer Plaintiff Blankenship underinsured motorist coverage equal to the liability limits ($300,000/$300,000) on her policy in 2007, the last time Plaintiff Blankenship made a change to her policy.

---

[3] Pltf and Def.'s Joint Stip. of Facts Related to the PIP Claims, D.I. 76 (Feb. 16, 2015).

[4] The Court notes that Plaintiff originally advanced an argument that Plaintiff Tracey did not have standing to bring a claim for reformation of Plaintiff Blankenship's Policy. The parties have since resolved this issue and as a result, Janet Blankenship was added as a party to this action.

As a result of that alleged breach, Plaintiffs seek reformation of the underinsured motorist policy limits to $300,000/$300,000.[5]

Plaintiffs further argue that the PIP application submitted to Defendant requires payment of the claimed PIP bills pursuant to statute. Plaintiffs suggest that because State Farm received a partial bill, the "duty of goo[d] faith and fair dealing to their insured require[s] the carrier to investigate the medical bills."[6] Rather, Plaintiffs contend that because Defendant did not make a coverage determination, there was no statutory duty on the part of Plaintiffs to submit bills.[7] In support of that argument, Plaintiffs submit that "State Farm never confirmed to Ms. Tracey that they would cover her claim. Yet, State Farm then turned around and told Ms. Tracey that the claim would not be honored because she did not submit enough bills within the proper time frame."[8] Plaintiffs contend that "[i]t simply does not make sense that a carrier can deny a claim, for failing to submit medical bills, when the carried has neglected to ever agree to coverage."[9]

## B. Defendant's Contentions

Defendant contends that State Farm offered Plaintiff Blankenship in 2007 the maximum amount of split coverage statutorily required, and as a result, Plaintiffs are not entitled to reformation of the Blankenship policy.[10] Defendant represents that State Farm did not offer single-limit coverage in 2007, the last time that Plaintiff Blankenship changed her policy.[11] Accordingly, Defendant argues that there is no basis upon which this Court can order the reformation of the Blankenship policy because there was no breach of statutory duty under section 3902(b).[12]

On the issue of PIP coverage, Defendant argues that there is no PIP coverage available under either the Tracey policy or the Blankenship policy. Defendant contends that no coverage should be afforded because there were no complete bills submitted within the twenty-seven month time period required by 21 *Del. C.* § 2118(a)(2)(I). Defendant acknowledges that it did receive a partial bill, but that the partial bill received did not indicate that the bill was complete or that any amount

---

[5] *See* Tr. of Oral Arg. at 24, D.I. 86 (Mar. 16, 2015).
[6] *Id.*
[7] *See* Pltf.'s Supp. Br. at 7-8, D.I. 81 (Feb. 27, 2015) ("There is no obligation to submit bills in the absence of the carrier's agreement to cover and/or pay").
[8] Pltf.'s Supp. Br. at 6, D.I. 81 (Feb. 27, 2015).
[9] *Id.*
[10] *See* Def.'s Mot. for Summ. J. at 15, D.I. 44 (Oct 31, 2014).
[11] *See* Ltr. from Def. to Ct. dated Feb. 20, 2015, D.I. 77 (Feb. 20, 2015).
[12] *See* Def.'s Resp. to Pltf.'s Mot. for Summ. J. at ¶¶ 8-9, D.I. 50 (Nov. 7, 2014).

was owed.[13] Defendant disputes that any duty existed to investigate medical bills and argues that Plaintiffs' "defense that State Farm should have taken more steps to make sure Plaintiff[s] met [their] own statutory obligations, fails."[14] Defendant requests that this Court deny Plaintiffs claims because it did not receive a completed PIP application, or Plaintiff's medical bills (save for the one partial bill) until after the twenty-seven months had passed.[15]

## IV.  STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[16] On summary judgment, the Court must view the facts in the light most favorable to the non-moving party.[17]  Once a moving party establishes that no material facts are disputed, the non-moving party bears the burden to demonstrate a material fact issue by offering admissible evidence.[18]  The non-moving party must do "more than simply show that there is some metaphysical doubt as to material facts."[19] Where, like here, the parties have filed cross-motions for summary judgment, and have not raised any issues of material fact, "the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[20]

## V.  DISCUSSION

The Court notes at the outset that the parties agree that no material facts are in dispute. In addition to the stipulations of fact, the Court has looked to uncontroverted facts in the pleadings as necessary.

---

[13] *See* Def.'s Mot. for Summ. J. at 11-13.

[14] Def.'s Supp. Br. at 4, D.I. 84 (Mar. 9, 2015)

[15] *See id.*

[16] *See* Super. Ct. Civ. R. 56(e).

[17] *See Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970).

[18] *See* Super. Ct. Civ. R. 56(e); *See also Phillips v. Del. Power & Light Co.*, 216 A.2d 281, 285 (Del. 1966).

[19] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[20] Super. Ct. Civ. R. 56(h). In addition to the record submitted with the motions, the Court requested, and the parties filed, stipulations of fact for the summary judgment motions, discussed *supra*.

## A. Underinsured Motorist Coverage and Policy Reformation

The first issue in this case is whether Defendant State Farm was required to offer certain coverage to Plaintiff Blankenship when she changed her policy in 2007. If Defendant breached its statutory duty to make an offer of certain coverage to Plaintiff Blankenship, reformation of the policy may be warranted. Reformation of Plaintiff Blankenship's policy is sought by Plaintiff to expand coverage for expenses related to Plaintiff Tracey's injuries.[21] To decide this issue, the Court looks to the plain, unambiguous language of 18 *Del. C.* § 3902(b), which reads:

> (b) Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death up to a limit of $100,000 per person and $300,000 per accident *or* $300,000 single limit, but not to exceed the limits for bodily injury liability set forth in the basic policy. Such additional insurance shall include underinsured bodily injury liability coverage.[22]

As explained by the Supreme Court of Delaware in *USAA v. Knapp*, the plain language of section 3902(b) "requires insurers to offer UM/UIM coverage 'up to a limit of' $100,000/$300,000 for split coverage and $300,000 for single limit coverage (or such lesser amounts as are contained in the basic policy.)"[23] This requirement is renewed each time there is a material change made to the policy.[24] Notably, the statute "does not require an insurer to offer both split and single limit UM/UIM coverage if the insurer does not issue both types of policies."[25] The conjunctive "or" in the statute supports this.

*McKamey v. Nationwide Mut. Ins. Co.* is particularly instructive here.[26] In *McKamey*, the Plaintiffs had $300,000/$300,000 in bodily injury coverage and $100,000/$300,000 in UM/UIM coverage.[27] The Court there held that because the defendant insurer did not write single limit insurance policies, it was only required to offer split limit coverage. The Court further found that the defendant insurer's offer of $100,000/$300,000 in UM/UIM coverage was appropriate, as it was the "maximum amount of coverage statutorily required."[28]

---

[21] As stated in the stipulations of fact, the parties have stipulated that Plaintiff Tracey is insured under the Blankenship policy.

[22] 18 *Del. C.* § 3902(b) (emphasis added).

[23] *U.S. Servs. Auto. Ass'n v. Knapp*, 1998 WL 171073, at *1 (Del. Mar. 19, 1998).

[24] *See, e.g., State Farm Mut. Auto. Ins. Co. v. Arms*, 477 A.2d 1060, 1064-65 (Del. 1984).

[25] *Knapp*, 1998 WL 171073, at *1 (Del. Mar. 19, 1998).

[26] *McKamey v. Nationwide Mut. Ins. Co.*, 1999 WL 743561 (Del. Super. Jul. 23, 1999).

[27] *See McKamey*, 1999 WL 743561, at *2 (Del. Super. Jul. 23, 1999).

[28] *Id.*

7

The facts here are very similar. Plaintiff Blankenship had the same coverage limits as the Plaintiffs in *McKamey*: $300,000/$300,000 in bodily injury coverage and $100,000/$300,000 in UM/UIM coverage. Defendant State Farm did not offer single limit policies in 2007, the last time Plaintiff Blankenship changed her policy.[29] Plaintiff argues that Defendant breached its statutory duty when it failed to reoffer coverage in an amount that matched Plaintiff Blankenship's bodily injury liability limits, but this Court disagrees. Following the holdings in *Knapp* and *McKamey*, the Court finds that Defendant was, in 2007, only statutorily required to offer $100,000/$300,000 of UM/UIM coverage, and further finds that Defendant's failure to offer UM/UIM coverage in the amount of $300,000/$300,000 did not run contrary to section 3902(b). Grant of summary judgment on this issue in favor of Defendant is the appropriate disposition of this issue.

### B. PIP Coverage

The issue of whether Defendant breached its statutory duty to pay insurance benefits is governed by 21 *Del. C*. §§ 2118 and 2118B. Section 2118 obligates the insurer to promptly pay benefits once there is a written request for benefits, and once documentation is received that shows that treatment and expenses are compensable pursuant to 2118(a).[30]

The Court disagrees with Plaintiffs' contention that there was no statutory duty on the part of Plaintiffs to submit bills until Defendant had made a coverage determination. Plaintiffs further suggest that "[i]t simply does not make sense that a carrier can deny a claim, for failing to submit medical bills, when the carried has neglected to ever agree to coverage."[31] In support of this argument, Plaintiffs cite *Lukk v. State Farm* and *Salvatore v. State Farm*, but reliance on both cases is misplaced.[32] In both cases, the Court declined to find a continuing duty on the part of Plaintiff to submit bills once the insurance carrier denied coverage. Here, there

---

[29] *See* Ex. A to Pltf.'s Reply to Def.'s Resp. to Pltf.'s Mot. for Summ. J., D.I. 58 (Dec. 16, 2014) (exhibiting available coverage at the time of Plaintiff Blankenship's last policy change). The parties have stipulated that Plaintiff Blankenship's $300,000/$300,000 liability policy is indeed a split limit policy, and thus there is no need to address the arguments raised by Plaintiffs' counsel during briefing and at oral argument that Plaintiff Blankenship's $300,000/$300,000 liability policy was indistinguishable from a $300,000 single limit policy. The Court makes note of the argument only to point out that there is indeed a distinction between a $300,000/$300,000 split limit policy and a $300,000 single limit policy. *See, e.g., Bush Leasing v. Gallo*, 634 So.2d 737, 741 (Fla. Dist. Ct. App. 1st Dist. 1994) (discussing practical difference between single limit and split limit coverage).

[30] *See* 21 *Del. C*. § 2118.

[31] *Id*.

[32] *See Lukk v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 4247767 (Del. Super. Aug. 27, 2014); *Salvatore v. State Farm Mut. Auto. Ins. Co.*, 2005 WL 1952904 (Del. Super. Jul. 28, 2005).

was never any denial of coverage, but rather, there was an ongoing investigation by State Farm into whether Plaintiff Tracey was covered under Plaintiff Blankenship's policy.

State Farm requested information and medical bills several times, a fact that Plaintiffs do not dispute.[33] Plaintiffs failed to provide Defendant with the information necessary to make a coverage determination, and Plaintiffs took almost no affirmative action to facilitate the claim until the cut-off date for submission of bills was upon them. It is undisputed that Plaintiff Tracey was hospitalized from the date of the accident, May 25, 2011, until July 25, 2011.[34] A PIP claim was not opened under the Blankenship Policy until January 9, 2013, approximately eighteen months after Plaintiff Tracey was released from the hospital.[35] The cut-off date for submission of bills, barring any impracticability issues, was May 25, 2013. On August 19, 2013, State Farm contacted Plaintiff for additional documentation, and that same day, Plaintiffs faxed a partial bill from Christiana Hospital, indicating some of the expenses incurred by Plaintiff Tracey during her stay in the hospital immediately following the accident.[36] The bill listed expenses from only several days of Plaintiff Tracey's nearly two month long hospital stay, and there is no balance reflected anywhere on the partial bill.[37] Plaintiffs did not return a completed PIP application until October 2013.[38]

Defendant could not reasonably be expected to resolve the question of coverage if the Plaintiffs fail to participate meaningfully in providing the necessary information to do so. This Court does not agree that Defendant "neglected" to make a coverage determination in this case. Rather, it appears to the Court that Plaintiffs' counsel's treatment of the submission of documentation to resolve the question of coverage delayed the process significantly. Though Plaintiffs point out that Defendant "was aware of the gravity of the injury and the length of the hospital stay," any awareness on the part of Defendant does not change the fact that Plaintiffs participation in the PIP claim process was severely deficient.

Further, though Plaintiffs suggest otherwise, this Court finds that Defendant did not have an affirmative duty to contact all of Plaintiff Tracey's medical

---

[33] *See* Ex. 2 to Def.'s Supp. Br., D.I. 84 (Mar. 9, 2015) (providing copies of letters to Plaintiffs' counsel's office requesting information on numerous occasions).

[34] *See* Pltf and Def.'s Joint Stip. of Facts Related to the PIP Claims at ¶ 2, D.I. 76 (Feb. 16, 2015).

[35] *See id.* at ¶ 5.

[36] *See* Def.'s Supp. Br. at 2, D.I. 84 (Mar. 9, 2015); *See also* Ex. A to Pltf. and Def.'s Joint Stip. of Facts Related to the PIP Claims, D.I. 76 (Feb. 16, 2015) (providing copy of Christiana Hospital bill).

[37] *See* Ex. A to Pltf. and Def.'s Joint Stip. of Facts Related to the PIP Claims, D.I. 76 (Feb. 16, 2015).

[38] *See* Pltf and Def.'s Joint Stip. of Facts Related to the PIP Claims at ¶ 11.

providers to request the information necessary to resolve coverage questions without involvement of the Plaintiffs. Placing the burden on Defendant to determine the full extent of every PIP claim without involvement or assistance of the Plaintiffs is something this Court is unwilling to do.

As for the cut-off date for submission of bills, Pursuant to 21 *Del C.* § 2118(a)(2)(i), PIP bills must be submitted to the insurer "as promptly as practical, in no event more than 2 years after they are received by the insured."[39] "Expenses which are incurred within the 2 years but which have been impractical to present to an insurer within the 2 years shall be paid if presented within 90 days after the end of the 2-year period."[40] Though the parties are in agreement that August 27, 2013 was the latest cut-off date for submission of bills, the Court notes that the August 27 date is only the cut-off date if Plaintiff establishes that it was impractical to submit the medical bills within 2 years. Otherwise, the cut-off date to submit bills would have been May 25, 2013.

No impracticability argument is made by Plaintiffs and no justification is offered for the submission of the partial bill in an untimely fashion. Plaintiffs have made no effort to show any impracticability, and thus the Court has not been convinced that it was impracticable for Plaintiff to submit any expenses before May 25, 2013, the two year deadline articulated in 21 *Del C.* § 2118(a)(2)(i)(1). On May 25, 2013, no medical bills or PIP application had been submitted. As a result, the Court finds that Defendant had no duty to pay the partial bill that it had in its possession on August 19, 2013. Not only was the bill an incomplete statement of the expenses incurred by Plaintiff Tracey during her stay at Christiana Hospital, it did not indicate that any balance was due, and it was received nearly three months after the May 25, 2013 deadline for submission articulated by statute. Further, Plaintiffs suggest that Defendant was on notice of "the gravity of the injury and the length of the hospital stay" once they received the partial bill. The Court need not consider the issue other than to note that since the bill was not received until well after the two year deadline, no obligation to pay the partial bill arises. Defendant further had no duty to provide reimbursement on Plaintiff Tracey's completed PIP application submitted in October 2013, as the application was also submitted well past the May 25, 2013 deadline.[41] Grant of summary judgment in favor of Defendant is appropriate as to the PIP issue.

---

[39] 21 *Del C.* § 2118(a)(2)(i)(1).

[40] 21 *Del C.* § 2118(a)(2)(i)(2).

[41] The Court notes that Defendant would still not have a duty to provide coverage for the PIP claim even if Plaintiff had succeeded in establishing impracticability. Impracticability would only extend the deadline for submission of bills to August 27, 2013, and Plaintiff Tracey's completed PIP application was submitted nearly two months later, in October 2013.

# CONCLUSION

For the foregoing reasons, Plaintiff's Cross-Motion for Summary Judgment **DENIED** as to all issues. Defendant's Amended Cross-Motion for Summary Judgment is **GRANTED** as to all issues.

**IT IS SO ORDERED.**

_____
Richard R. Cooch, R.J.

oc:    Prothonotary